IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTINA RILEY and JACQUELINE OVERTURF, | ) ) ) | CIVIL NO.  06-00563 JMS/KSC |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' |
| vs. | ) ) | MOTION FOR SUMMARY JUDGMENT RE: SECTION 1983 |
| STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY; GRW CORPORATION; GIL WALKER, Individually and in his Capacity as Chief Executive Officer of GRW Corporation; JOHN DOES 1-25; JANE DOES 1-25; DOE OFFICIALS 1-25; and DOE ENTITIES 1-25, | ) ) ) ) ) ) ) ) ) ) | CLAIMS AND RES JUDICATA |
| Defendants. _____ | ) ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT RE: SECTION 1983 CLAIMS
AND RES JUDICATA**

## I. **INTRODUCTION**

Defendants State of Hawaii Department of Public Safety ("State"),

Gil Walker ("Walker"), and GRW Corporation ("GRW") move for summary

judgment on all of the claims in Plaintiffs' Complaint.  Plaintiffs Christina Riley

("Riley") and Jacqueline Overturf ("Overturf") (collectively, "Plaintiffs") allege

that they were sexually assaulted by a GRW prison guard while incarcerated by

the State at the Brush Correctional Facility ("BCF")[1] in Brush, Colorado.

Defendants assert that: all of Plaintiffs' claims are barred by res judicata based on

a previous action in Colorado; the State has not waived its immunity from suit;

and Plaintiffs cannot maintain their 42 U.S.C. § 1983 claims against Walker and

GRW.

      A hearing was held on November 19, 2007.  Based on the following,

the court GRANTS in part and DENIES in part Defendants' motion.  The court

grants the motion with respect to all remaining claims against the State based on

the State's sovereign immunity.  The court denies the motion in part as to Walker

and GRW, finding that Plaintiffs' claims are not entirely barred by res judicata and

that Walker is not entitled to qualified immunity.  Because of the deficiency of the

record, the court does not reach Defendants' remaining summary judgment

arguments on Plaintiffs' § 1983 claims and GRANTS Defendants until December

20, 2007 to file a motion for summary judgment on Plaintiffs' § 1983 claims.

## II. <u>BACKGROUND</u>

**A.**    **Sexual Assault of Plaintiffs**

      Plaintiffs are Hawaii inmates who were incarcerated at BCF in

---

[1] BCF is owned and operated by Defendant GRW Corporation of which Defendant Walker is CEO.

Colorado.  The State contracted with GRW to house female inmates from Hawaii at BCF, by an Agreement effective July 31, 2004 through July 31, 2005 ("Agreement").  Pls.' Ex. 1.  On January 8, 2005,  Plaintiffs allege that they were sexually assaulted by Russell Rollison ("Rollison"), a BCF adult corrections officer.[2]  After reporting the assault, Plaintiffs were placed in administrative segregation for 37 days.  Pls.' Exs. 2 & 3.  According to Rick Soares, BCF Warden, Plaintiffs were being housed in the Segregation Unit until BCF was told to put them back into General Population.  Pls.' Ex. 3.  According to Overturf, Warden Soares told her that the State had ordered Plaintiffs into protective custody, but that "Colorado doesn't have a protective custody.  So they have to keep us in admin seg."  Pls.' Ex. 2 at 112.  Riley also claims that BCF staff told her "that Hawaii officials told [BCF] that they were to be placed in protective custody for their own protection," but Riley did not accept this explanation because she was forced to share a cell in segregation with another inmate who "is

---

[2] Following Plaintiffs' submission of written statements, BCF began investigating Rollison.  Rollison failed to appear for work on January 11, 2005 and disconnected his phone.  BCF Officers visited Rollison's home to inform him that he was placed on immediate suspension.  On January 13, 2005, two days after Plaintiffs reported the sexual assault, Rollison admitted to investigators that he had engaged in sexual activity with the Plaintiffs (although he contended that the encounter was consensual).  Rollison resigned, and was later convicted of a criminal offense relating to the January 8, 2005 incident.  *See Riley v. Haw. Dep't of Public Safety*, 2007 WL 3072777, at *3 (D. Haw. Oct. 17, 2007).

a real segregation inmate," who was "in the hole because she recently assaulted another inmate."  Pls.' Ex. 7 at 1.

While in administrative segregation, Plaintiffs were allowed only one hour per day of recreation time outside of their cells and did not receive their private property until one week into the administrative segregation.  Pls.' Ex. 2 at 111-12.  Riley said that she was treated "just like an inmate that did something wrong.  She's had all of her privileges taken away and she's locked down."  Pls.' Ex. 7 at 1.  Riley also complained that she did not feel safe in segregation because of her placement in a double cell with an inmate who recently assaulted another inmate, and that she was "being forced into protecting herself and this will give [BCF] an excuse to add more charges and lock her away."  *Id.* at 8.  According to Riley, "the facility treats inmates like they are the ones that have done something wrong when they are just reporting what's going on."  *Id.*

Plaintiffs claim that prior sexual assault allegations had been made against employees in other GRW facilities and that Walker knew of ongoing "sexual misconduct" at BCF.  *See* Pls.' Opp'n 8.  The timing, extent, and perpetrator of any other alleged sexual assault at BCF is unclear from the record.

## B.   Colorado Action

Plaintiffs filed a complaint against the State, Walker, GRW, Steve

Hargett (GRW's Vice President of Operations), and Rollison in the United States

District Court for the District of Colorado on July 12, 2006 ("Colorado

Complaint").  Defs.' Ex. B.  The Colorado Complaint alleged the following

claims: § 1983 violations by Rollison (Count 1); § 1983 violations by Walker and

GRW (Counts 2-4); assault and battery by all Defendants (Count 5); negligent

hiring and supervision by Walker and GRW (Count 6); a respondeat superior

claim against Walker and GRW (Count 7); false imprisonment and intentional

infliction of emotional distress ("IIED") against Rollison (Counts 8 & 9); and

punitive damages as to all Defendants (Count 10).  *Id.*

Around September 19, 2006, the parties agreed to dismiss the claims

against the State, Walker, and GRW (but not Rollison) in the Colorado action, as

Plaintiffs wanted to re-file the Complaint in Hawaii.  *See* Breiner Decl. ¶¶ 4-5.

Defendants' counsel confirmed with Rollison's counsel, Tiffaney Norton, that

Rollison had no objection to the dismissal of the claims against the other

Defendants.  Defs.' Ex. A at 1, attached to Defs.' Reply.  Defendants' counsel

prepared a joint stipulated motion to dismiss the complaint without prejudice in

accord with the Local Rules and forwarded it to Plaintiffs' counsel, along with the

following instructions:

> If you are contented with the draft and this report from Ms.
> Norton, please make the additions to the paragraph on

5

> conferring with her, sign at the signature block and email to
> me.  I can then see to the submission of the motion to the court,
> along with the proposed order.

*Id.*  Plaintiffs' counsel replied that the filing was acceptable and authorized

Defendants' counsel to file the motion, but did not address the blank areas to be

completed by Plaintiffs' counsel.  *See* Breiner Decl. ¶ 6.  No further action was

taken by either party.  As forwarded to Plaintiffs' counsel, the joint stipulation and

order (with several blanks to be completed by Plaintiffs' counsel), included a

signed certificate of service indicating filing via CM/ECF on September 19, 2007.

Pls.' Ex. A, attached to Breiner Decl.  Plaintiffs' counsel claims that he believed

that the joint stipulated motion was filed on September 19, 2006 and the parties

would be dismissed without prejudice and, as a result, did not file any additional

responsive pleadings in the Colorado action.  Breiner Decl. ¶¶ 7-11.  Defendants'

counsel, who knew that the motion had not been filed, did not hear back from

Plaintiffs' counsel about the joint stipulated motion and proceeded to litigate the

Colorado action.  Erler Decl. ¶ 9.  On September 19, 2006, Plaintiffs filed a

complaint in Hawaii state court ("Hawaii Complaint").

On January 31, 2007, the district court in Colorado granted in part

and denied in part Defendants' motion to dismiss the claims against the State,

Walker, and GRW.  Defs.' Ex. C.  Plaintiffs did not file an opposition to the

6

motion.  *Id.*  The January 31, 2007 Order dismissed the state law assault and battery claims against the State; the state law assault and battery, negligent hiring and supervision, and respondeat superior claims against Walker and GRW; and the punitive damages count against all Defendants.  The January 31, 2007 Order did not dismiss Plaintiffs' § 1983 claims against Walker and GRW.  *Id.*

In May, 2007, Plaintiffs agreed to dismiss with prejudice the remaining claims against the State, Walker, and GRW after Defendants' counsel would not agree to dismiss the claims without prejudice.  Breiner Decl. ¶¶ 14, 15. On May 31, 2007, the parties filed a Joint Stipulated Motion for Dismissal With Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).  Defs.' Ex. D.  On June 1, 2007, the district court granted the joint stipulated motion and dismissed the State, Walker, and GRW from the Colorado action.

## C.    Hawaii Action

Plaintiffs filed their Hawaii Complaint in the Circuit Court of the First Circuit on September 19, 2006 against the State, Walker (in his individual and official capacities), and GRW.  Defs.' Ex. A.  Defendants removed the case to this court on October 17, 2006.  The Hawaii Complaint alleges the following:

7

§ 1983 violations by GRW and Walker (Count 1)[3]; negligence by the State (Count 2); negligent hiring, supervision, and training of employees, and negligent care and treatment of Plaintiffs by GRW and Walker (Count 3); IIED and negligent infliction of emotional distress ("NIED") against all Defendants (Counts 4 & 5); respondeat superior against GRW and Walker (Count 6); and punitive damages against all Defendants (Count 7).

On August 8, 2007, Defendants filed a "Motion for Summary Judgment Re: Section 1983 Claims and Res Judicata."  Defendants seek summary judgment on all claims in the Hawaii Complaint on the grounds that: (1) the State is not subject to § 1983 liability and has not waived its immunity for its discretionary functions; (2) the § 1983 claims against Walker are barred by qualified immunity and there is no evidence he acted with deliberate indifference to Plaintiffs' rights; (3) there is insufficient evidence to maintain a § 1983 claim against GRW; and (4) all of Plaintiffs' claims are barred by res judicata based on the Colorado action.

Plaintiffs filed their opposition on November 1, 2007.  They argue that: (1) they did not assert a § 1983 claim against the State and that the State is

---

[3] Plaintiffs allege that their rights under the following Constitutional amendments were violated: Eighth (knowledge of prior sexual assaults and retaliation for reporting assault) and Fourteenth (placed in administrative segregation without due process).

not immune from suit on the state law claims; (2) Walker is not entitled to qualified immunity and was deliberately indifferent to Plaintiffs' safety and welfare; (3) the § 1983 claims against GRW are valid because Plaintiffs were retaliated against and denied due process when they were placed in administrative segregation after reporting the sexual assault and because GRW knew about ongoing sexual misconduct at BCF; and (4) Defendants should be estopped from asserting res judicata because Plaintiffs reasonably believed that the Colorado action had been dismissed without prejudice.

Defendants filed their reply on November 8, 2007, arguing that they should not be estopped from asserting res judicata because Plaintiffs' counsel knew or should have known that the Colorado action had not been dismissed without prejudice.  Defendants did not respond to Plaintiffs' arguments that they were retaliated against and denied due process as part of their § 1983 claims.  A hearing was held on November 19, 2007.  Based on the following, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

### III.  **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there

is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24. "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

at proof at trial.'"  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Celotex*, 477 U.S. at 322).  Moreover, there is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party.  *Matsushita*, 475 U.S. at 586; *Taylor*, 880 F.2d at 1045.

## IV. <u>ANALYSIS</u>

### A.    Res Judicata

Defendants argue that all of Plaintiffs' claims are barred by res judicata (claim preclusion) because they were previously litigated in Colorado. Plaintiffs argue that Defendants should be estopped from asserting claim preclusion because Plaintiffs mistakenly believed the action in the District of Colorado had been voluntarily dismissed by the parties without prejudice.[4]

---

[4] Plaintiffs' estoppel argument is not supported by the record.  When Defendants' counsel prepared the joint stipulated motion to dismiss, he included the following directions to Plaintiffs' counsel:

> If you are contented with the draft and this report from Ms. Norton, please make the additions to the paragraph on conferring with her, sign at the signature block and email to me.  I can then see to the submission of the motion to the court, along with the proposed order.

Defs.' Ex. A at 1, attached to Defs.' Reply.  Plaintiffs' counsel replied that the filing was acceptable and authorized Defendants' counsel to file the motion, but did *not* address the blank areas to be completed by Plaintiffs' counsel.  *See* Breiner Decl. ¶ 6.  No further action was thereafter taken by either party.  Although Plaintiffs' counsel may have believed in good faith that the parties had been dismissed without prejudice, the record does not support their claims that Defendants' counsel had a duty thereafter to contact Plaintiffs to inquire about the status of the joint motion or that Defendants' counsel misrepresented that the joint motion had, in fact, been filed.

The doctrine of claim preclusion provides that final judgment on the merits in one action bars subsequent re-litigation of the same claim by the same parties. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).[5]  "[F]ederal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts." *Id.* at 96; *see also First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000) ("When considering the preclusive effect of a federal court judgment, we apply the federal law of claim preclusion.  A final federal court judgment on the merits bars a subsequent action between the same parties which involves the same cause of action.") (citation omitted).

The elements of claim preclusion are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (citation and quotation signals omitted).  It is undisputed that the same parties are involved in the Hawaii

---

[5] "The Restatement of Judgments now speaks of res judicata as 'claim preclusion' and collateral estoppel as 'issue preclusion.'  Some courts and commentators use 'res judicata' as generally meaning both forms of preclusion." *Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980) (citation omitted).  Under res judicata (or claim preclusion), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.*  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.*  The claim preclusion doctrine applies in this instance because it involves an examination of re-litigation of the same claims by the same parties.

and Colorado actions.  The court first looks at whether there was a final judgment on the merits in the first action, and second, examines whether the two causes of action involve the same claims.

### 1.     *Final Judgment on the Merits*

The district court in Colorado entered two orders disposing of Plaintiffs' claims: a January 31, 2007 Order granting in part and denying in part Defendants' motion to dismiss and a June 1, 2007 Order dismissing with prejudice the claims against the State, Walker, and GRW pursuant to a Joint Stipulated Motion to Dismiss With Prejudice.  Defs.' Exs. C & E.  The court determines that the January 31, 2007 Order serves as a final judgment on the merits with claim-preclusive effect, while the June 1, 2007 Order does not.

### a.     *June 1, 2007 Order Dismissing Case With Prejudice*

Defendants argue that the Colorado district court's June 1, 2007 Order dismissing the State, Walker, and GRW is res judicata and bars all of Plaintiffs' claims against all Defendants.  The court disagrees.

The June 1, 2007 Order granted the May 31, 2007 Joint Stipulated Motion to Dismiss With Prejudice filed by the parties.  *See* Defs.' Ex. E.  The May 31, 2007 Joint Stipulated Motion to Dismiss With Prejudice was brought pursuant

13

to Federal Rule of Civil Procedure 41(a)(1).[6]  Because the dismissal with prejudice

was a voluntary, stipulated dismissal, Plaintiffs are not categorically barred from

bringing a second action against Defendants based on the same claims.

The Ninth Circuit has held "that a stipulated dismissal of an action

with prejudice in a federal district court generally constitutes a final judgment on

the merits and precludes a party from reasserting the same claims in a subsequent

action in the *same court*."  *Headwaters Inc*., 399 F.3d at 1052 (emphasis added).

Although *Headwaters Inc*., did not involve a party raising similar claims in a

*different* court, it discusses the effect of filing the second action in a different

forum:

> We note that a stipulated dismissal "with prejudice" under Rule
> 41 of the Federal Rules of Civil Procedure may not have *res
> judicata* effect, even for the named parties in that suit, in
> another court.  In *Semtek International, Inc. v. Lockheed
> Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32

---

[6] Federal Rule of Civil Procedure 41(a)(1) provides:

> Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of
> the United States, an action may be dismissed by the plaintiff without
> order of court (i) by filing a notice of dismissal at any time before service
> by the adverse party of an answer or of a motion for summary judgment,
> whichever first occurs, or (ii) by filing a stipulation of dismissal signed by
> all parties who have appeared in the action.  Unless otherwise stated in the
> notice of dismissal or stipulation, the dismissal is without prejudice,
> except that a notice of dismissal operates as an adjudication upon the
> merits when filed by a plaintiff who has once dismissed in any court of the
> United States or of any state an action based on or including the same
> claim.

> (2001), the Supreme Court noted that although such dismissals are commonly denominated adjudications "on the merits," only a judgment that "actually passes directly on the substance of a particular claim before the court . . . triggers the doctrine of res judicata or claim preclusion." *Id.* at 501-02, 121 S.Ct. 1021 (alterations and citation omitted).  Consequently, a dismissal with prejudice in federal court "bar[s] refiling of the same claim in" the same district court, but is only "a necessary condition, not a sufficient one, for claim-preclusive effect in other courts." *Id.* at 506, 121 S.Ct. 1021.  As this case was filed in the same district court as the one claimed to be preclusive, however, the otherwise important distinction made in *Semtek* is not pertinent to this prong of the inquiry.

*Id.* at 1052 n.4.  The important distinction made in *Semtek*, however, is pertinent in this case.[7]  *Semtek* explains the effect of a dismissal "without prejudice" on subsequent filings in a different forum:

> The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.  That will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself.

*Semtek Int'l, Inc.*, 531 U.S. at 505.  Although the stipulated dismissal here was "with prejudice," the *Semtek* analysis is equally applicable: the dismissal's

---

[7] *Semtek* traced the evolution of the phrase "judgment on the merits," explaining that the original connotation was one that actually addressed the substance of the claims before the court. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-02 (2001).  Over time, the meaning has been applied to judgments "that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect."  *Id.* at 502.  *Semtek* concludes that: "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect."  *Id.* at 503.

"primary meaning relates to the dismissing court itself." *Id.* Ruling on the effect of an involuntary dismissal under Federal Rule of Civil Procedure 41(b), *Semtek* concluded that the phrase "adjudication on the merits" as used in the rule does not mean the involuntary dismissal is entitled to claim-preclusive effect. *Id.* at 503. Instead, it is "a necessary condition, but it is not a sufficient one, for claim-preclusive effect in *other* courts." *Id.* at 506 (emphasis added). The result of the dismissal in *Semtek* was that the plaintiff was barred from refiling the same claim in the same court.

     *Semtek* rejected the premise "that a dismissal of a claim *with* prejudice necessarily has claim-preclusive effects in other jurisdictions." *Styskal v. Weld County Bd. of County Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). Thus, based on *Semtek*, "When a [federal] court rules that a dismissal is with prejudice, it is saying only that the claim cannot be refiled in that court." *Id.* at 859 (citation and quotation signals omitted; brackets in original). The decision regarding whether claim preclusion prevents a second action "will depend upon the basis of the federal court's dismissal, not the nomenclature employed by the federal court to describe the dismissal." *Id.*

     Whether a dismissal with prejudice has preclusive effects in other courts will depend on additional matters, such as whether the dismissing court

passed on the substance of the claim.  *See Semtek Int'l Inc.*, 531 U.S. at 501-03;

Restatement (Second) of Judgments § 20 cmt. d (court's denominating a dismissal

as "with prejudice" ordinarily has no effect on preclusive effect of the dismissal).

The district court in Colorado did not pass on the substance of Plaintiffs' claims,

but rather, granted the parties' Joint Stipulated Motion to Dismiss With Prejudice.

In this circumstance, the June 1, 2007 Order dismissing with prejudice the State,

Walker, and GRW does not have claim-preclusive effect on Plaintiffs' second

action filed in Hawaii.

> b.      *January 1, 2007 Order Granting Motion to Dismiss*

There was a final judgment on the merits of some of Plaintiffs' claims

in the Colorado action.  Unlike the June 1, 2007 Order, the January 31, 2007 Order

passed on the substance of several claims, dismissing the state law assault and

battery claims against the State; the state law assault and battery, negligent hiring

and supervision, and respondeat superior claims against Walker and GRW; and the

stand-alone punitive damages count against all Defendants.  The January 31, 2007

Order did not dismiss Plaintiffs' § 1983 claims against Walker and GRW for

failure to specifically plead or demonstrate exhaustion in their Complaint.  *See*

Defs.' Ex. C.  The January 31, 2007 Order does not indicate that the claims were

dismissed "with prejudice," "without prejudice," or whether Plaintiffs were

permitted to amend the Colorado Complaint.

The court rejects Plaintiffs' argument that the January 31, 2007 Order was a dismissal without prejudice based on Federal Rule of Civil Procedure 41(a)(2). Plaintiffs argue that because the Order does not specify that the dismissal was "with prejudice," that pursuant to Rule 41(a)(2), the Order is not a final, appealable order. *See* Fed. R. Civ. P. 41(a)(2) ("Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."). Plaintiffs are mistaken as to the applicability of the rule; Rule 41(a) applies to *voluntary* dismissals. Because the January 31, 2007 Order dismissed certain claims based on Defendants' motion to dismiss pursuant to Rule 12(b)(6), the dismissal was not voluntary. A dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" to which res judicata applies. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (*citing Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3, (1981)); *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007).

The January 31, 2007 Order is a final judgment on the merits with claim-preclusive effect on Plaintiffs' second action; that is, Plaintiffs are precluded from re-litigating those claims dismissed in the January 31, 2007 Order.

### 2.     *Identity of Claims*

The court next looks to whether the two causes of action are the same for purposes of claim preclusion.  *First Pac. Bancorp, Inc*., 224 F.3d at 1128.  To answer that question, the following factors are considered:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.  The last of these criteria is the most important.

*Id.* (citation and quotation signals omitted).  Because Plaintiffs' claims arise out of the same sexual assault at BCF, those claims previously litigated on the merits in Colorado may not be re-litigated in Hawaii.

Several of Plaintiffs' claims in their Hawaii Complaint are identical to claims dismissed in the Colorado action: both complaints include a stand-alone claim for punitive damages against all parties; claims for negligent hiring, supervision, and training against Walker and GRW; and a respondeat superior claim against Walker and GRW.  To the extent those claims are re-alleged in the Hawaii Complaint, they are barred.  Thus, Plaintiffs' claim against all parties for punitive damages as a stand-alone claim (Count 7); claims for negligent hiring, supervision, and training against Walker and GRW (Count 3); and the respondeat

19

superior claim against Walker and GRW (Count 6) are not before the court.[8]

The court therefore GRANTS in part and DENIES in part

Defendants' motion for summary judgment based on res judicata.

## B.    Claims Against the State

The parties agree that a § 1983 claim cannot lie against the State.

With respect to the state-law torts alleged in the Hawaii Complaint (including

negligence, IIED, and NIED), the State argues that it has not waived its sovereign

immunity for discretionary functions.  The parties agree that the State's transfer of

inmates to GRW was a discretionary function.  Plaintiffs claim that the State's

immunity for discretionary functions under Hawaii Revised Statutes ("HRS")

§ 662-15 is not implicated because the State did not exercise due care in ensuring

that GRW would provide Hawaii inmates with safe, supervised custody prior to

executing the Agreement with GRW.

In support of this argument, Plaintiffs claim that they were told by

GRW officials that the State ordered BCF to put Plaintiffs in protective custody

when they reported the sexual assault, but that BCF did not have a protective

---

[8] The following claims in the Hawaii Complaint are not precluded: § 1983 claims against Walker and GRW (Count 1); negligence claim against the State (Count 2); and intentional and negligent infliction of emotional distress against all Defendants (Counts 4 and 5).  Although Plaintiffs' may not seek punitive damages as a stand-alone claim, the Colorado district court did not preclude Plaintiffs from seeking them as a remedy.

custody unit; instead, Plaintiffs were placed in administrative segregation. According to Plaintiffs, this is evidence that the State did not understand BCF's capabilities, which raises a genuine issue of fact as to whether the State exercised due care in ensuring that GRW would be able to provide Hawaii inmates with proper care and custody at BCF, prior to executing the Agreement with GRW and Walker. The State asserts that Plaintiffs fail to present any evidence that the State was negligent or otherwise responsible for Plaintiffs' injuries.

Under HRS § 662-15(1), the State has not waived its sovereign immunity for:

> [a]ny claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused.

Although "discretionary function" is not defined in HRS chapter 662, the Hawaii Supreme Court looks to "whether broad policy considerations were involved and has compared and distinguished discretionary functions from operational level decisions which involve routine everyday matters." *Nakahira v. State*, 71 Haw. 581, 583, 799 P.2d 959, 961 (1990).

"Other activities [that were] deemed to involve the evaluation of

21

broad policy factors, and are therefore discretionary, include a decision to purchase certain aircraft, a decision to activate an airbase, [and] a decision not to build a prison." *Awakuni v. Awana*, 115 Haw. 126, 144, 165 P.3d 1027, 1045 (2007) (citation and quotation signals omitted; brackets in original). *See also Nakahira*, 71 Haw. at 585, 799 P.2d at 962 ("[T]he State's adoption of a program to certify non-aviator personnel to conduct 'run-ups' of helicopters is a discretionary function, but we further hold that implementation of the training of the non-aviator personnel is not a discretionary function under the State Tort Liability Act."); *Julius Rothschild & Co. v. State*, 66 Haw. 76, 80-81, 655 P.2d 877, 881 (1982) (holding that the State's decision not to reconstruct the Moanalua Stream Bridge to conform to a fifty-year flood criterion constituted a discretionary function, involving "a weighing of priorities at the higher levels of government, and . . . surely entail[ing] evaluations based on financial, political and economic considerations.").[9]

---

[9] Decisions that involve the implementation of decisions made in the everyday operation of government affairs are not discretionary functions. *See Tseu ex rel. Hobbs v. Jeyte*, 88 Haw. 85, 90, 962 P.2d 344, 349 (1998) (explaining that "the discretionary function exception is limited to situations in which the government agent is engaged in the effectuation of 'broad public policy.' The investigation of a complaint by the [Hawaii Civil Rights Commission], in and of itself, does not involve such considerations."); *Breed v. Shaner*, 57 Haw. 656, 562 P.2d 436 (1977) (holding that discretionary function exception did not apply to the act of designing a highway); *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970) (holding that discretionary function exception did not apply to the maintenance of drainage culverts); *Rogers v. State*, 51

(continued...)

The State's decision to execute the Agreement with GRW was not a routine, everyday matter, but involved the evaluation of broad policy factors. The decision to contract with GRW is similar to deciding whether to purchase certain aircraft, to activate an airbase, or to build a prison. *See Awakuni*, 115 Haw. at 144, 165 P.3d at 1045. The State's decision to contract with GRW -- regardless of whether the State knew that BCF did not have a protective custody unit -- is a decision that involves weighing priorities at the higher levels of government and "would surely entail evaluations based on financial, political and economic considerations." *Id.* at 143-44, 165 P.3d at 1044-45 (citation omitted). Regardless of whether the State made a poor decision, based on imperfect information or investigation, the conduct complained of falls within the discretionary function exemption in HRS § 662-15(1), which applies "whether or not the discretion involved has been abused." The State is therefore immune from the remaining claims in the Hawaii Complaint.

The court GRANTS Defendants' motion for summary judgment with

---

[9](...continued)
Haw. 293, 459 P.2d 378 (1969) (holding that discretionary function exception did not apply to the placement of road signs and stripings); *Upchurch v. State*, 51 Haw. 150, 153-54, 454 P.2d 112, 115 (1969) (holding that act of adopting rules and regulations is within the discretionary function of the prison authority, but that the failure of employees to carry out their duties as prescribed by the rules, or their failure to exercise due care in the performance of their duties, was not exempt).

respect to the claims against the State.

## C.     Walker Is Not Entitled to Qualified Immunity on Section 1983 Claims

Private prison employees are not entitled to qualified immunity.[10]

*Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (holding that "private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a § 1983 case").

> In *Richardson*, the Court held that qualified immunity was not available to privately employed prison guards because the Court was unable to identify a "firmly rooted" tradition of such immunity. Although government-employed prison guards had enjoyed qualified immunity growing out of their employment status, the Court cited extensive history of private institutions involved in providing prison services and cases allowing the imposition of liability on private jailors. The Court therefore concluded that no firmly rooted tradition of immunity existed. The Court left open the question whether some private actors closely related to governmental function might have some kind of qualified immunity in contexts unrelated to prisons.

*Jensen v. Lane County*, 222 F.3d 570, 576 (9th Cir. 2000) (citations omitted).

*Richardson* includes the following caveat:

> we have answered the immunity question narrowly, in the

---

[10] Qualified immunity protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If an official could reasonably have believed his or her actions were legal in light of clearly established law and the information he or she possessed at the time, the official is protected by qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

> context in which it arose.  That context is one in which a
> private firm, systematically organized to assume a major
> lengthy administrative task (managing an institution) with
> limited direct supervision by the government, undertakes that
> task for profit and potentially in competition with other firms.
> The case does not involve a private individual briefly
> associated with a government body, serving as an adjunct to
> government in an essential governmental activity, or acting
> under close official supervision.

*Richardson*, 521 U.S. at 413.  Walker argues that this caveat applies because

"GRW was actually acting in a quasi-governmental capacity."  Defs.' Reply 4.

Defendants fail, however, to sufficiently distinguish the "quasi-governmental" role

of GRW to that of the private prison corporation in *Richardson*, which the

Supreme Court described as a "private firm, systematically organized to assume a

major lengthy administrative task (managing an institution) with limited direct

supervision by the government, [which] undertakes that task for profit and

potentially in competition with other firms."  *Richardson*, 521 U.S. at 413.

The Ninth Circuit has further developed the contours of qualified

immunity for private actors post-*Richardson*.  *See, e.g.*, *Hepting v. AT & T Corp.*,

439 F. Supp. 2d 974, 1007 (N.D. Cal. 2006) ("Although this issue has been

addressed by the Ninth Circuit in several cases, the court has yet to extend

qualified immunity to a private party under *McKnight*.").  Prior to *Richardson*, the

Ninth Circuit "adopted a general rule that private parties are not entitled to

25

qualified immunity from actions brought under 42 U.S.C. § 1983." *Ace Beverage v. Lockheed Info. Mgmt. Servs.*, 144 F.3d 1218, 1219 n.3 (9th Cir. 1998). *Ace Beverage* involved a government contractor hired by the City of Los Angeles to process parking tickets and set ticket disputes for trial who was sued under § 1983. *Id.* at 1219-20. *Ace Beverage* held that Lockheed, the private contracting firm, was not entitled to qualified immunity under *Richardson* because, like the private prison corporation in *Richardson*, it is "a 'firm, systematically organized' to undertake a governmental task, as opposed to 'a private individual, briefly associated with a government body . . . .' Lockheed is most assuredly in the position of the firm, not the individual in the Supreme Court's example." *Id.* at 1220 (citations omitted). Like the firms in *Ace Beverage* and *Richardson*, GRW is a firm, systematically organized to undertake a governmental task, as opposed to a private individual, briefly associated with a government body. The court rejects Walker's argument that because "GRW was actually acting in a quasi-governmental capacity," he is entitled to qualified immunity.

The court DENIES Defendants' motion for summary judgment with respect to qualified immunity.

//

//

26

**D.    The Court Does Not Reach the Section 1983 Claims Against Walker and GRW**

The court does not reach Defendants' additional arguments for summary judgment.  The record before the court -- including the parties' briefing and submitted exhibits -- is wholly insufficient.  Neither the briefing nor the exhibits properly present the relevant issues, much less allow the court to substantively determine the parties' perceived summary judgment arguments and supporting evidence.

For example, Defendants' motion does not seek summary judgment on the merits of Plaintiffs' Fourteenth Amendment claims, and argues that the Eight Amendment claims are insufficient because Walker personally was not deliberately indifferent to Plaintiffs' rights and because GRW did not have a custom or policy allowing prison guards to sexually assault inmates.  Although Defendants' motion does not directly address the Fourteenth Amendment violations, Plaintiffs' opposition argues that they were denied due process when they were placed in administrative segregation.  Defendants do not reply to the points raised by Plaintiffs' Fourteenth Amendment due process argument, but assert that there is nothing in the record regarding when other alleged assaults took place, the nature of the other assaults, or what action GRW should have taken to

27

prevent the assault.  In short, Defendants never address the merits of the

Fourteenth Amendment due process claim raised for the first time in Plaintiffs'

opposition.

In an attempt to demonstrate that they had a due process liberty

interest prior to their transfer to administrative segregation, Plaintiffs attach

Colorado Department of Corrections ("DOC") Administrative Regulation ("AR")

600-02.  *See* Pls.' Ex. 5.  The regulation as submitted, however, was not in effect

at the time Plaintiffs were assaulted and placed in administrative segregation in

January, 2005.  The version of AR 600-02 submitted by Plaintiffs was effective

October 15, 2006.[11]  Because the record does not include the pertinent

administrative regulation, it is not possible to address Plaintiffs' Fourteenth

Amendment due process argument.[12]

---

[11] Earlier Tenth Circuit law, under prior DOC regulations, ruled that Colorado had not given inmates such a liberty interest.  *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) ("We disagree that Colorado laws and regulations entitle inmates to remain in the general population absent certain conduct.  DOC Regulation 600-2 says that a transfer to administrative segregation 'shall be ordered in the sound exercise of discretion by the classification officer or committee' . . . .  We therefore conclude that Colorado has not given [inmates] a liberty interest in [their] prison classification.").

[12] The briefing and exhibits regarding Plaintiffs' Eighth Amendment § 1983 claims are also unsatisfactory.  For instance, in an attempt to demonstrate that Walker had personal knowledge of other assaults at BCF, Plaintiffs attach portions of Walker's deposition transcript from another case in the District of Colorado, 05-CV-02541.  *See* Pls.' Ex. 4.  It appears that Plaintiffs inadvertently failed to include page 157 of the deposition transcript, which may be relevant to the issue.

Because the court prefers to address the Plaintiffs' § 1983 claims in their entirety (both the Eighth and Fourteenth Amendment claims) and due to the deficiency of the submissions, the court does not address the remainder of Defendants' motion for summary judgment.

This ruling is without prejudice to Defendants filing a motion for summary judgment that addresses Plaintiffs' § 1983 claims. Although the deadline for dispositive motions was August 29, 2007, Defendants are granted until December 21, 2007 to file their motion for summary judgment on Plaintiffs' § 1983 claims. The parties are to contact Magistrate Judge Chang by December 3, 2007 in order to reset the remaining deadlines, including the presently scheduled trial dates.

## V.  **CONCLUSION**

Defendants' motion for summary judgment is GRANTED as to the State. The motion is GRANTED in part and DENIED in part as to Walker and GRW. The following claims remain against Walker and GRW: § 1983 claims based on violations of the Eighth and Fourteenth Amendments (Count 1), and intentional and negligent infliction of emotional distress under state law (Counts 4 and 5).

Defendants are GRANTED until **December 21, 2007** to file a motion

29

for summary judgment on Plaintiffs' § 1983 claims.  The parties are ORDERED to

contact Magistrate Judge Chang by **December 3, 2007** in order amend the current

scheduling order, including the presently scheduled trial date..

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 21, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Riley et al. v. State of Hawaii Dep't of Public Safety et al.*, Civ. No. 06-00563 JMS/KSC,
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE: SECTION 1983 CLAIMS AND RES JUDICATA